79 So.3d 49 (2011)
The STATE of Florida, Petitioner,
v.
Gerald JOSEPH, Evans Jean, Roosevelt Dejoie, and Edouard Toussaint, Respondents.
No. 3D10-2858.
District Court of Appeal of Florida, Third District.
October 12, 2011.
Rehearing Denied February 21, 2012.
Pamela Jo Bondi, Attorney General, and Rolando A. Soler, for petitioner.
Lee Friedland, Fort Lauderdale, for respondents.
Before SHEPHERD and SALTER, JJ., and SCHWARTZ, Senior Judge.
PER CURIAM.
The State of Florida petitions for a writ of certiorari to quash a trial court order granting the defendants' motion to suppress the victim's identification of the defendants. We grant certiorari because we find that the trial court departed from the essential requirements of law in not considering whether the suggestive nature of *50 the identification created a substantial likelihood of irreparable misidentification. Simmons v. State, 934 So.2d 1100 (Fla. 2006); State v. Parker, 991 So.2d 411 (Fla. 3d DCA 2008).
Edouard Toussaint, Gerald Joseph, Evans Jean, and Roosevelt Dejoie were charged with kidnapping and armed robbery with a firearm. The victim, owner of a convenience store, had just closed the store for the night. As he was locking the door a man approached him and struck him in the back of the head with a gun. The victim tried to run away. Other men approached him and they put the victim in their SUV. The men drove the victim around until 2:30 a.m. They kept him face down in the back seat and sat on him to prevent him from seeing them. The victim's face was covered with a bag for parts of this time. When the men released the victim he was told to bring a specified amount of cash to a secluded spot behind a designated Burger King at 11:00 a.m. The victim was beaten and was told that his family would be killed if he failed to drop off the cash as directed.
The following morning, at about 9:00 a.m., the victim went to the police station. The only description the victim gave of the assailants was that there were four or five men; the men were black; the victim thought they were Haitian or Jamaican. The victim did not give any more specific details.
The lead detective arrived at 10:00 a.m.; a surveillance of the money drop site was arranged. The main concern was orchestrating the money drop quickly. The police drove the victim to the site in an unmarked car. The victim placed the bag of cash on the other side of the wall specified in the drop-off instructions.
Shortly after the drop, a Toyota sedan with three men (defendants Toussaint, Joseph, and Dejoie) pulled up next to the bag. One of the men got out of the car and picked up the bag. Moments later, a half-mile away, the police stopped this car. The men were arrested, handcuffed, and ordered on the grass face down.
The police took the victim to the scene to have him identify the assailants. The victim may have heard over the police radio, "we've got them," as the police communicated with each other. The victim saw the three men face down on the grass, in hand cuffs. The victim was told "they caught some people. You have to go and recognize them." During the fifteen-minute procedure, each of the three men was escorted by a uniformed police officer to stand in the middle of the road. The victim identified the men as the assailants. He hesitated with one of them (no one recalls which one) and had to be driven closer for a better look.
The police later apprehended a fourth man, Evans Jean. Jean had been seen with the three men in the Toyota but was not in the car when the bag was picked up. The police had called the victim's cell phone number and the victim's cell phone, stolen during the kidnapping, rang while on Jean's person. Jean was taken to the police station and the victim was asked to identify him. Jean was walked outside the station back door in handcuffs. From about 30 to 40 yards away, the victim identified Jean as another of the assailants.
The trial court suppressed the identification because the procedure was unnecessarily suggestive. This petition followed.
In ruling on a motion to suppress an identification, the trial court must first consider whether the police employed an unnecessarily suggestive procedure. Simmons; Parker. Upon a finding that this is so, the court must look at the totality of the circumstances to determine whether *51 the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. The five factors for determining the latter are: Whether the victim had the opportunity to view the criminal at the time of the crime; the victim's degree of attention; the accuracy of the victim's description prior to the identification; the victim's level of certainty at the confrontation; and the length of time between the crime and the confrontation. Simmons, 934 So.2d at 1118; Parker, 991 So.2d at 414.
A review of the transcript in this case demonstrates that while the court did determine that the procedure employed was unnecessarily suggestive,[1] it did not determine whether this gave rise to a substantial likelihood of irreparable misidentification.
The trial court thereby departed from the essential requirements of law. Parker. The order is therefore quashed and the cause remanded for further proceedings.
Certiorari granted; order quashed.
SHEPHERD, J., concurring.
I join in the decision of the court on the sole ground the trial court departed from the essential requirements of law by failing to examine the totality of the circumstances to determine whether the procedure employed by the police gave rise to a substantial likelihood of irreparable misidentification. See State v. Parker, 991 So.2d 411, 414-15 (Fla. 3d DCA 2008) ("[E]ven if we were to find that the identification procedure employed by law enforcement was unnecessarily suggestive in the instant case, we would be required to grant the State's petition, as the trial court failed to perform the two-part test in determining whether, under the totality of the circumstances, the suggestion procedure gave rise to a substantial likelihood of irreparable misidentification.").
NOTES
[1] In defense of the procedure utilized, the State's evidence reflected three significant facts that were not expressly addressed by the trial court. First, the alleged perpetrators in the abduction were armed with handguns. Second, only three of "four or five" abductors were taken into custody after the money drop, with the possibility that one or two might have seen the pursuit of the Toyota and still be at large. Third, the officers needed to eliminate any misidentification immediately, because of the threats of harm to the victim's family. Whether the identification procedure was "unnecessarily" suggestive under those circumstances should be addressed with specificity on remand.